UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-23152-CIV-GOLD/GOODMAN

ARYS CABRERA

     Plaintiff,

v.

RAY LaHOOD, Secretary,
DEPARTMENT OF TRANSPORTATION,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT [ECF No. 40]

THIS CAUSE is before the Court upon Defendant Ray LaHood's, Secretary,
Department of Transportation ("Defendant") Motion for Summary Judgment. **[ECF No.
40]**. Oral argument on Defendant's Motion was held on April 26, 2011. *See* **[ECF No.
62]**. Having reviewed the parties' submissions, applicable law, record, and parties'
arguments at the hearing, I GRANT Defendant's Motion for Summary Judgment for the
reasons set forth below.

Defendant moves for summary judgment on three bases:  (1) Plaintiff Arys
Cabrera ("Plaintiff") cannot present a *prima facie* case of disparate treatment
discrimination since he cannot show that similarly situated employees of a different
national origin were treated more favorably than Plaintiff, or that Plaintiff suffered an
adverse employment action; (2) Plaintiff cannot present a *prima facie* case of retaliation
since he cannot show that he suffered an adverse employment action when he was not
allowed to conduct a facility tour or given opportunities to serve in a supervisory
capacity, nor can he show a causal link between those events and his prior complaint of

discrimination; and (3) Defendant had legitimate non-discriminatory reasons for actions which Plaintiff cannot show are pretextual.

In opposition, Plaintiff, a Hispanic employee, argues that similarly situated employees were treated more favorably because at least two non-Hispanic employees were involved in multiple operational errors "much more serious" than Plaintiff's purported performance deficiencies and neither employee was decertified. Plaintiff also claims he suffered an adverse employment action because his decertification precluded his work in a supervisory capacity. Finally, Plaintiff argues that he meets the burden to demonstrate that Defendant's actions are pretextual because there were other actions that could have been taken "short of decertification."

## I. Procedural history

On November 13, 2008, Plaintiff filed the operative complaint under Title VII (42 U.S.C. § 2000e) alleging two counts for violation of the Civil Rights Act of 1964 based on National Original Discrimination (Count I) and Retaliation (Count II) while employed at the Federal Aviation Administration ("FAA"). **[ECF No. 1]**. On April 29, 2010, the parties filed a Joint Motion to Administratively Close Case. **[ECF No. 28]**. The basis of this motion was because a manager at the Air Traffic Control Facility was integrally involved in the events forming the basis of Plaintiff's claims. *Id.* at 2. At the time the parties filed the Joint Motion, the manager was on indefinite medical leave and on medication which would affect his ability to testify. *Id.* The parties requested that I administratively close the case and re-open it upon the parties' update to the Court within 90 days. *Id.* at 3.

2

On April 30, 2010, I granted the parties' Joint Motion, administratively closing the case and requiring the parties to file a motion by August 2, 2010 requesting either re-opening the case or extending the stay. **[ECF No. 29]**. On August 2, 2010, the parties filed a Joint Motion to Reopen Case **[ECF No. 31]**, which I granted on August 9, 2010. **[ECF No. 21]**.

## II.    Factual background

In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed facts. *See* S.D. Fla. L.R. 7.5. If necessary, the non-moving party may file a concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless controverted by the non-moving party. *Id.* Pursuant to Fed. R. Civ. P. 56(e)(2), "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *See also Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("conclusory allegations without specific supporting facts have no probative value.").

In support of its Motion for Summary Judgment, Defendant filed a Statement of Undisputed Material Facts. **[ECF No. 40]**. In response, Plaintiff filed a Response indicating Material Facts in Dispute and Facts Which Preclude Summary Judgment.

3

**[ECF No. 56]**.  The following facts from the parties' Statements of Facts, taken in the light most favorable to the Plaintiff, are undisputed:

### A.    Plaintiff

Plaintiff, a Hispanic male, is employed by the FAA as an air traffic controller in Miami.  **[ECF No. 40 ¶ 1]**.  Controllers are supervised by front line managers, who in turn are supervised by operations managers.  *Id.* at ¶ 2.  Plaintiff's current supervisor is Angela Levangie, but he has also had other supervisors during his employ with FAA. *Id.* at ¶ 3.  Plaintiff's second level supervisor in 2006 was Ivonne Toledo.  *Id.*

### B.    Controller in Charge ("CIC") and On the Job Training Instructor ("OJTI")

In addition to performing their normal duties, controllers also have the opportunity to serve as Controller in Charge ("CIC").  *Id.* at ¶ 4.  A CIC is a controller who is designated to be in charge when the supervisor is unavailable to manage the area for a short period of time and an individual is needed to temporarily fill the role.  *Id.*  CICs do not have the full authority of a supervisor.  *Id.* at ¶ 5.  For example, CICs may not approve leave or call in overtime.  *Id.*  However, CICs are in charge for the period of time when the manager is not on the scene.  *Id.*

Employees may become CICs if they are recommended by their front line manager and operations manager.  *Id.* at ¶ 6.  Plaintiff was given various opportunities to serve as CIC during his employment with the FAA.  *Id.*  In addition to serving as CICs, controllers may also serve as On the Job Training Instructors ("OJTI").  *Id.* at ¶ 7. As OJTIs, controllers train more junior controllers who are still learning the job.  *Id.* Controllers who serve in an OJTI capacity are recommended for their position by their

supervisors. *Id.* at ¶ 8. The controller then attends a three day class to prepare them for the OJTI role. *Id.* Plaintiff has served as an OJTI in the past. *Id.*

### C.    Skills checks

In order to have their job performance evaluated, controllers are observed when they perform their duties, and they are also administered skills checks. *Id.* at ¶ 10. A skills check is a session in which a managerial level employee observes a controller while he or she is doing his work in order to evaluate performance. *Id.* at ¶ 11. The manager plugs into the radar station at which the controller is working and observes the controller performing his or her job. *Id.* After the skills check is performed, the employee's performance is reviewed with the employee. *Id.*

### D.    Plaintiff's decertification

In July 2006, John Mineo, a front line manager, administered a skills check to Plaintiff. *Id.* at ¶ 12. Plaintiff's second level supervisor, Ivonne Toledo, was present while the skills check was being conducted. *Id.* Subsequently, Mark Palazzo, Quality Assurance/Safety Manager, conducted a second skills check. *Id.* at ¶ 15. During that skills check, Mr. Palazzo plugged into the sector alongside Plaintiff and Plaintiff was advised that a skills check was being conducted. *Id.* Mr. Palazzo knew that Plaintiff had a prior skills check that was considered marginally successful, but he did not know any details about the deficiencies that Plaintiff had exhibited in the first skills check. *Id.*

Once an employee is decertified, he or she must go through additional training as prescribed by his or her supervisor. *Id.* at ¶ 18. Plaintiff was decertified on August 3, 2006.[1] During the time period that Plaintiff was decertified, his salary continued.[2]

---

[1] Counsel for Plaintiff acknowledged this fact at oral argument based on my review of the evidence in the record. *See* **[ECF No. 40-3]**.

Plaintiff's complaint of discrimination was filed with the EEOC in October 2006.[3] Plaintiff was eventually recertified in November 2006, after undergoing additional training. **[ECF No. 40 ¶ 18]**. In March 2007, Plaintiff was decertified another instance, but did not bring an EEOC claim for discrimination or retaliation for that time period.[4]

### E.    Facility tour

In 2007, Plaintiff brought a group of students from his class where he is an instructor to conduct a facility tour. *Id.* at ¶ 19. Mr. Thomas, the Air Traffic Manager in charge of the facility at that time, had previously approved the tour. *Id.* When Plaintiff came to the facility to conduct the tour, Mr. Garcia, an operations manager, was aware that Plaintiff was on leave at that time, and so he spoke to Mr. Palazzo and others about it. *Id.* at ¶ 20. Mr. Garcia was told that Plaintiff was not supposed to be at the facility, communicated this Plaintiff, and assured Plaintiff that the tour would still be conducted in his absence. *Id.* at ¶ 21. Mr. Thomas was not at the facility during this incident and another manager was acting in his stead. *Id.* at ¶ 22. However, Mr. Thomas was aware of what occurred and concurred with the decision. *Id.*

### III.    Jurisdiction

A federal court must always determine whether it has jurisdiction to hear a case. *See, e.g.*, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006) ("The objection that a federal court lacks subject matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of

---

[2] This fact was also acknowledged by counsel for Plaintiff during oral argument.

[3] This fact was provided by counsel for Defendants during oral argument.

[4] The parties discussed this fact during oral argument. In a rather candid admission, counsel for Plaintiff acknowledged that Plaintiff lost his opportunity to claim damages subsequent to the second decertification in 2007 because no EEOC claim was filed and he failed to challenge the second decertification.

judgment."); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) ("Indeed, it is well-settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). As such, even when there is no dispute between the parties with respect to jurisdiction, federal courts have an independent duty to ensure that subject-matter jurisdiction exists. In the instant matter, I exercise federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f). *See* **[ECF No. 1 ¶ 4]**.

## IV.    Applicable law

On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Hilburn v. Murata Elec. North Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). In considering whether the movant has met its burden, the court views the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party "must go beyond the pleading through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is genuine issue for trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## V.    Analysis

### A.    *Prima facie* **case of discrimination based on disparate treatment**

In order to establish a *prima facie* case of discrimination based on disparate treatment, Plaintiff has the initial burden of demonstrating all of the following: 1) the

7

plaintiff is a member of a protected group; 2) the plaintiff suffered an adverse action; and 3) similarly situated employees, not of the plaintiff's protected group, were treated differently. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *E.E.O.C. v. Joes's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Courts in this circuit apply the burden-shifting structure developed in *McDonnell-Douglas* and *Burdine* to evaluate claims of discrimination based on circumstantial evidence.

Plaintiffs may prove discrimination through direct (which encompasses statistical evidence) or circumstantial evidence. *See Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000). Direct evidence is evidence that shows an employer's discriminatory intent without any inference or presumption. *Id.* The *prima facie* case must be established with enough evidence that a jury might reasonably find for the plaintiff. *Id.* at 828. In cases where direct evidence of discriminatory intent is difficult to establish,[5] "the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir. 1998).

---

[5] There is some debate within the Eleventh Circuit as to the definition of direct evidence. *Compare Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999) ("[D]irect evidence, in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic.") *with Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir.1999) ("We have defined direct evidence as evidence, which if believed, proves [the] existence of [the] fact in issue without inference or presumption." (citation omitted)).

8

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *See Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1521 (11th Cir. 1991). The defendant only has to produce, not prove, the non-discriminatory reason, and the burden is thus "exceedingly light." *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). Once the defendant articulates legitimate, nondiscriminatory reasons, the plaintiff must then prove that the defendant's proffered explanation is a pretext for unlawful discrimination. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. Fla. 2010) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)). Plaintiff's mere belief, speculation, or conclusory accusation that he was subject to discrimination will not create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment. *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1073-74 (11th Cir. 1995). Even if a plaintiff demonstrates that the employer's proffered explanation is false, this "does not necessarily entitle a plaintiff to get past summary judgment." *Alvarez*, 610 F.3d at 1264-65 (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1025, n. 11 (11th Cir. 2000) (en banc)). Finally, particularly in this case, it should be noted that "[a]lthough a plaintiff's burden in proving a prima facie case is light, summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

Defendant does not dispute the first requirement to establish *prima facie* case of discrimination, *i.e.*, that Plaintiff is a member of a protected group. Accordingly, the issue is whether there are triable issues of material fact with respect to the second and

9

third prongs of the *McDonnell-Douglas* test, that Plaintiff suffered an adverse action and similarly situated employees, not of Plaintiff's protected group, were treated differently. As I determine from the parties' briefs and the evidence offered in support thereof, and based on the parties' arguments at the April 26, 2011 hearing, there are no triable issues of material fact with respect to these two prongs, and summary judgment must be granted in favor of Defendant.

## 1. Whether Plaintiff suffered an adverse action

"[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001) (citations omitted). "[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* at 1240 (emphasis added). In *Davis*, the plaintiff was briefly "removed" on two instances as the designated Officer-in-Charge. *Id.* at 1243. The Eleventh Circuit noted that "[t]he OIC designation is, by definition, ephemeral: an officer is not permanently named the OIC for any given shift, but rather that determination is made on a case-by-case basis by the relevant supervisory officials." *Id.*

Plaintiff argues that as a result of the decertification, he suffered a loss of compensation since he lost CIC (Controller in Charge) and OJTI (On the Job Training Instructor) opportunities. Plaintiff also claims that he was not provided with any CIC and/or OJTI opportunities due to discrimination. Finally, Plaintiff opposes the Motion for Summary Judgment based on his claim that he was not allowed to conduct a facility tour, which he claims is an adverse employment action.

10

I agree with Defendant that the denial of Plaintiff's opportunity to conduct the tour it did not affect the terms, conditions, and privileges of Plaintiff's employment in a serious or material way. Plaintiff's Opposition only points to the "evidence" (presumably, Plaintiff's affidavit) that "Plaintiff worked as an instructor and in his capacity as an instruction, he obtained permission to take his students on a tour of the facility." **[ECF No. 56, p. 4]**. The only discussion of the effect of Plaintiff's failure to be able to provide a tour is that "[Plaintiff] was told to leave the facility despite the fact he had previously been approved and this caused him great embarrassment." *Id.* at 4-5. Plaintiff fails to cite any authority for the proposition that this embarrassment amounts to an adverse action against Plaintiff.[6] Indeed, the inability for Plaintiff to provide a tour to his students was unrelated to Plaintiff's employment with Defendant and only concerned his unrelated role as an instructor.

Plaintiff also claims that his decertification was an adverse action resulting in a reduction of pay, as well as inability to work overtime and holidays. In other words, Plaintiff's argument is that he would have been afforded additional CIC and OJTI opportunities had he not filed a claim of discrimination. Defendant correctly notes that in Plaintiff's cited case, *Bass v. Bd of County Commissioners*, 256 F.3d 1095 (11th Cir. 2001), it was established that the plaintiff would have had those opportunities for extra income. However, in the instant case, "Defendant argues that Plaintiff has not shown that he would have had OJTI and CIC opportunities for the August 2006 to November 2006 time period in which he was decertified or for any other time period." **[ECF No. 58, fn. 11]**. Plaintiff's affidavit simply states that "[a]t the time [Plaintiff] was denied the

---

[6] Defendant points out that Plaintiff was not allowed to conduct the tour since he was on medical leave imposed by his physician and Plaintiff and his students were accommodated because another individual was located to give the tour.

11

opportunity to work OJTI and CIC, additional compensation was provided for only one of the additional responsibilities; however, both offer experience necessary to obtain promotions and advance within the Agency." **[ECF No. 57-1 ¶ 4]**. Notably, Plaintiff does not attest under oath or submit any evidence that Plaintiff would have had the opportunity to engage in the OJTI and CIC positions in the supervisory capacity but for his decertification. Further, the Eleventh Circuit in *Davis* did not find that the potential of obtaining "experience" in order to seek out further promotions was a proper basis for establishing an adverse employment action:

> To the extent Davis's removal as OIC [officer-in-charge] on these two occasions deprived him of valuable experience that might have given rise to more lucrative opportunities within the department or elsewhere, Davis acquired that experience by serving as OIC on previous and subsequent occasions. In any event, this claim of harm is made only at the highest order of abstraction; there is no evidence that Davis sought, let alone was denied any opportunity due to his removal as OIC on the two occasions at issue. The OIC incidents plainly do not establish adverse employment action.

*Davis*, 245 F.3d at 1245.

I agree with Defendant that Plaintiff's situation is more akin to *Moore v. Miami Dade County*, 2005 WL 3273722 (S.D. Fla. 2005) (plaintiffs failed to show that being placed on administrative leave for one month was an adverse employment action because of alleged loss of overtime). In *Moore*, a court within this District noted that "[t]he courts have specifically held that a suspension with pay for a short period of time is not an adverse employment action." 2005 WL 3273722 at *11 (citations omitted). Furthermore, the plaintiffs in *Moore* claimed that they suffered "adverse employment action because they lost their ability to earn overtime pay and therefore a potentially higher calculation for retirement income for that period." *Id*. However, in determining

that such administrative leave without pay was not an adverse employment action, the court pointed to the law of this Circuit, recognizing: "The Eleventh Circuit has held that, in certain instances, denial of a right to overtime may constitute an adverse employment action." *Id.* (citations omitted). The court in *Moore* further explained that the plaintiffs had failed to present the following evidence:

> 1) that overtime was guaranteed; 2) how much overtime was available during the period they were on administrative leave; or 3) that they would have actually worked overtime if it had been available to them. At best, Plaintiffs have made conclusory statements at their depositions that they were denied the ability to work overtime. The record contains no evidence that Plaintiffs would have been called for overtime while they were on administrative leave.

*Id.*

Similarly, Plaintiff has not proffered sufficient evidence to oppose Defendant's Motion for Summary Judgment, such as evidence that Plaintiff would have been afforded more CIC and OJTI opportunities had he not filed a claim of discrimination, *i.e.*, that he suffered adverse employment action. Indeed, Plaintiff's arguments are speculative that he would have in fact received these opportunities. The record is devoid of evidence regarding eligibility of employees such as Plaintiff to obtain CIC and OJTI opportunities. Further, whether an employee may serve in one of those capacities falls at the discretion of the supervisor, at least with respect to the CIC position. Other than general remarks throughout Plaintiff's deposition regarding his prior experience of CIC and OJTI opportunities, no specific employment records have been introduced regarding the frequency with which Plaintiff served in those capacities—underscoring the rather speculative nature of these "missed opportunities."

13

Plaintiff also relies on *Bass*, in which the Eleventh Circuit noted that the plaintiff there "was not given the same <u>duties</u> as the other Training Instructors. Bass was given no routine work assignments and was forced to perform custodial and clerical duties under the supervision of less senior personnel." 256 F.3d at 1118 (emphasis added). Here, Plaintiff only alleges that he was not provided the <u>opportunity</u> to perform supervisory work as a CIC or OJTI. However, the record lacks evidence suggesting that Plaintiff would have been permitted to do so notwithstanding the decertification. Thus, Plaintiff has failed to demonstrate that he suffered adverse employment action. *Davis*, 245 F.3d at 1246 ("Because adverse employment action is an indispensable element of a Title VII plaintiff's case, Davis's failure to present sufficient evidence for a reasonable jury to find that this element was met is fatal to his case.") (citing *Turlington*, 135 F.3d at 1432).

## 2. Whether similarly situated employees were treated more favorably

Assuming *arguendo* that Plaintiff can establish adverse employment action, Plaintiff must still demonstrate that similarly situated employees were treated more favorably than Plaintiff in order to survive summary judgment. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.") (citing *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989)).

To establish the "similarly situated" prong of the prima facie case, a plaintiff must show that there were employees, not within his protected class, who were similarly situated in all relevant respects, but who were treated more favorably. *See Brown v.*

14

*Ala. DOT*, 597 F.3d 1160, 1174 (11th Cir. 2010) (citing *Holifield*, 115 F.3d at 1562); *St. Hilaire v. The Pep Boys*, 73 F.Supp.2d 1366, 1371 (S.D. Fla. 1999) ("*Pep Boys II*"). The burden is on the plaintiff to show that similarly situated employees were not treated equally. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989). In determining whether employees were similarly situated and more favorably treated, the court must consider whether the employees involved in, or accused of, the same or similar conduct were disciplined in different ways. *Pep Boys II*, 73 F.Supp.2d at 1371.

> The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. **We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.**

*Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (internal quotations and citations omitted; emphasis added). Similarly situated employees "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating conduct that would distinguish their conduct or the appropriate discipline for it." *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531, 1547 (S.D.N.Y. 1986); quoted favorably in *Patterson v. Wal-Mart Stores, Inc.*, 1999 WL 1427751 at *8 (M.D. Fla. 1999) and *Sanguinetti v. United Parcel Serv., Inc.*, 114 F.Supp.2d 1313, 1317 (S.D. Fla. 2000). The Eleventh Circuit has recognized that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Gerwens*, 874 F.2d at 1541. Further, "it is necessary to consider whether the employees are involved in or accused of the

15

same or similar conduct and are disciplined in different ways." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).

Plaintiff points to two other employees, claiming they are similarly situated to Plaintiff and received more favorable treatment. The evidence presented upon the instant Motion and the opposition thereto demonstrates that several non-Hispanic employees have not been decertified, despite personnel statements indicating that they have committed operational errors. *See* **[ECF No. 57-3]**. Defendant argues that "Plaintiff is asking the Court to compare and rank different types of errors i.e. compare apples and oranges, and substitute its judgment (or Plaintiff's judgment) as to which performance is worse . . ." **[ECF No. 58, p. 7]**.

Plaintiff has not submitted any affidavit or evidence to support the contention that the two non-Hispanic employees can serve as comparators for the purposes of determining whether they were treated more fairly. Indeed, the entirety of Plaintiff's evidence submitted in support of his Opposition consists of his affidavit, the Air Traffic Quality Assurance 7210.56C document, the personnel statements of the two employees, a table of operational errors, and performance deficiencies. Plaintiff fails to fully explain how these items of evidence submitted in support of Plaintiff's Opposition demonstrate that, as a preliminary matter, the two non-Hispanic employees are similarly situated to Plaintiff—let alone that their alleged errors warranted decertification similar to that of Plaintiff.

As the evidence proffered by Defendant suggests, Plaintiff relies on the 7210.56-C Air Traffic Quality Assurance order which sets forth remedial actions to correct deficiencies, including when and how to decertify an Air Traffic Controller as it

16

relates to operational errors, and not skills checks.[7]  **[ECF No. 47-1, p. 32]** (Deposition of Mark Palazzo).[8]  As Plaintiff concedes in his Opposition, the two non-Hispanic employees that Plaintiff claims are similarly situated committed operational errors, and not deficiencies in skills checks. Granted, Plaintiff argues that these operational errors were more serious than deficiencies in skills checks and therefore warranted decertification as well.  However, in doing so, Plaintiff urges the undersigned to compare different types of errors and essentially substitute my judgment for that of the FAA in determining the extent of which an employee's errors shall result in decertification. By reviewing the extent of Plaintiff's performance deficiencies—failure to issue proper weather advisories, use appropriate phraseology, ensure separation between planes, issue a traffic alert or safety advisory—Plaintiff's supervisors determined that decertification was warranted. It is not within my province to supersede the FAA in determining the scope of decertification based on operational errors or deficiencies in skills checks. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions," internal citations omitted).  Accordingly, Plaintiff has failed to meet his burden to demonstrate that the two non-Hispanic employees were similarly situated and treated more fairly based on their errors and their personnel records.

---

[7] At oral argument, counsel for Defendant represented that no specific codification or FAA order or regulation exists to determine when a controller with specific performance deficiencies must be decertified.  The evidence in the record supports this representation. *See e.g.*, **[ECF No. 42-1, pp. 44-50]** (Deposition of Angela Levangie, FAA front line manager and Plaintiff's supervisor, discussing factors to consider in determining type of corrective action following performance deficiencies).

[8] Mr. Palazzo was FAA Manager of Safety and Quality Assurance when Plaintiff was first decertified. **[ECF No. 47-1, pp. 5-6]**.

### B.   *Prima facie* case of retaliation

To establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he or she engaged in statutorily protected EEO activity; (2) an adverse action was taken by his employer after the plaintiff's EEO activity; and (3) there is a causal connection between the protected activity and the adverse action.  *See Lipphardt v. Durango Steakhouse of Brandon*, 267 F.3d 1183, 1186 (11th Cir. 2001); *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998).  When establishing a *prima facie* case, a plaintiff is not required to prove that the underlying discriminatory conduct he or she opposed was actually unlawful to overcome a motion for summary judgment. *See Little v. United Technologies, Carrier Transicold Division*, 103 F.3d 956, 960 (11th Cir. 1997).  Instead, the Plaintiff is required to show a "good faith, reasonable belief" that the employer engaged in unlawful employment practices.  *Id.*

### 1.   Causal connection between protected activity and adverse action

To satisfy the causal connection requirement, a plaintiff must show that his supervisors were actually aware of the protected expression at the time they allegedly took the adverse employment action.  *See Goldsmith*, 996 F.2d at 1163; *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 2001 WL 50433 at *6 (11th Cir. 2001).  Once a plaintiff establishes a prima facie case, the defendant must proffer a legitimate, non-discriminatory reason for the adverse employment action.  *See EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993).  If Defendant offers legitimate reasons for the employment action, Plaintiff must then demonstrate that

Defendant's proffered explanation is a pretext for retaliation. *See Goldsmith*, 996 F.2d at 1163.

Even assuming that Plaintiff's inability to provide the tour and obtain overtime pay constituted adverse action, the evidence proffered does not establish a causal connection. With regard to the facility tour, Plaintiff admits that he was on leave imposed by his own doctor at that time. *See* Deposition of Plaintiff Arys Cabrera ("Pl. Depo.") at pp. 116-117. Thus, Plaintiff cannot show that being deprived of the ability to conduct the tour was in any way related to his complaint of discrimination. Similarly, with regard to obtaining CIC and OJTI opportunities, Plaintiff cannot show that failure to receive these opportunities are related to his 2006 decertification. Indeed, Plaintiff has admitted that he has received OJTI and CIC opportunities since his 2006 decertification. Pl. Depo. 131:9-13; 163:14-17. Accordingly, I find that Plaintiff has not demonstrated that a causal connection existed between the inability to provide the tour and Plaintiff's discrimination complaint.

### 2. Pretext

Once the defendant proffers a legitimate, nondiscriminatory justification for the plaintiff's employment termination, the presumption of discrimination is eliminated and the burden shifts to the plaintiff to produce evidence sufficient for a reasonable fact-finder to conclude that the employer's reasons are pretext for discrimination and that the employer thus had a discriminatory intent. *See Chapman v. Al Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). In other words, the plaintiff must show that "a discriminatory reason more likely than not motivated [the employer] to [terminate him]." *Burdine*, 450 U.S. at 256. Such proof may be direct or circumstantial. *Smith v. Horner*,

839 F.2d 1530, 1536 (11th Cir. 1988). As stated by the Eleventh Circuit, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030.

In some cases, it may be sufficient to "infer the ultimate fact of discrimination from the falsity of the employer's explanation" without the introduction of additional, independent evidence of discrimination if the prima facie case has been established and there is sufficient evidence to reject the employer's explanation. *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 831 (11th Cir. 2000). Factors in making such a judgment include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* at 832 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).

Here, assuming *arguendo* that Plaintiff met his burden of presenting a *prima facie* case, there remains the issue of whether there was pretext for the allegedly unlawful discrimination. Defendant argues that legitimate, non-discriminatory reasons existed for its actions. Plaintiff acknowledges that he bears the burden to demonstrate that the purported bases for the action were pretextual. **[ECF No. 56, p. 6]**. The evidence in the record reveals that the decision to decertify Plaintiff came subsequent to two skills checks administered to Plaintiff. Plaintiff argues that "the decision to give the two 'annual' skills checks back to back after Plaintiff passed the first one was justified. [*sic*]" *Id.* Presumably, Plaintiff intends to argue that the pretext arose in the context of administering two skills checks, which were generally annual examinations, in close

20

proximity of time to each other.  Plaintiff also argues that "decertification is a last ditch effort to address the employee's performance issues and normally is not even justified when an employee has an Operational Error[.]"  *Id.*  Plaintiff's final argument is that there is a genuine issue of fact as to whether Plaintiff was already on medical leave when his tour was approved.  Plaintiff claims that if the tour was approved after Plaintiff already was on medical leave, then medical leave could not have been a legitimate basis to deny his request to give the tour.

As a preliminary matter, I have already addressed Plaintiff's claim regarding his inability to provide a tour to his students, determining that this did not constitute an adverse employment action.  As to Plaintiff's other arguments, there is no evidence in the record to support the conclusory contentions in Plaintiff's Opposition.  Plaintiff does not submit or cite any affidavit or evidence that suggests that the skills checks were strictly annual in nature, or that it was improper for Defendant to administer two skills checks to Plaintiff within a given time frame.  The evidence in the record, even taken in the light most favorable to Plaintiff, reveals that Plaintiff engaged in documented deficiencies with his performance, Plaintiff was provided opportunities to rehabilitate his performance through skills checks, and Plaintiff failed to perform to the established standards of his job function at various instances.  Indeed, the admission at oral argument that there was a second decertification[9] following a continuous need for remedial action supports Defendant's argument that there was a legitimate employment reason for the action, *i.e.*, there was no pretext for Defendant's actions.

---

[9] At oral argument, counsel for Plaintiff acknowledged that the second decertification is not part of the instant case, *i.e.*, that Plaintiff does not seek damages relating to this second March 2007 decertification.

As discussed *supra*, there is similarly no evidence, *i.e.*, an affidavit from an individual with knowledge of employment practices in the air traffic field, that decertification was improper in this context. Indeed, the only evidence before me is Plaintiff's affidavit which simply states that "I should not have been decertified based on my results on the second Annual Skills Check. The decertification was not in accord with FAA 7210.56C Air Traffic Quality." **[ECF No. 57-1 ¶ 6]**. This alone is insufficient to meet Plaintiff's burden of rebutting the presumption that Defendant's actions were legitimate and nondiscriminatory.

## VI.   Conclusion

Based on the foregoing, it is hereby ORDERED and ADJUDGED that:

1.   Defendant's Motion for Summary Judgment **[ECF No. 40]** is GRANTED.

2.   This case is CLOSED.

DONE and ORDERED in Chambers at Miami, Florida this 28 day of June, 2011.

THE HONORABLE ALAN S. GOLD
UNITED STATED DISTRICT JUDGE

cc:   U.S. Magistrate Judge Jonathan Goodman
      Counsel of record

22